

FILED BY ____JA____ D.C.

Mar 16, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**21-20158-CR-COOKE/O'SULLIVAN**
CASE NO. _____

18 U.S.C. § 1349
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

ANALAY RICO and
DAYLEN DIAZ,

        **Defendants.**
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At various times relevant to this Information:

1. Clinical research trials, also known as clinical investigations, were research studies conducted on voluntary human subjects designed to answer specific questions about the safety or effectiveness of new drugs. Drug developers, or "sponsors," initiated and took responsibility for clinical research trials.

2. The United States Food and Drug Administration ("FDA") was responsible for ensuring that drugs intended for human use were safe and effective. The FDA relied on the truthfulness and accuracy of the results of clinical research trials to make regulatory decisions about the approval of new drugs, with the ultimate goal of ensuring that all FDA-approved drugs were safe and effective for their approved uses in humans.

3. Before beginning a clinical research trial, sponsors were required to provide the

FDA with extensive information regarding the proposed trial, including a detailed investigation plan known as a "study protocol." The study protocol described, among other things, the eligibility criteria for individuals to enroll as study subjects, schedules of tests and procedures, drug and dosage regimens, the length of the study, and the health outcomes to be measured by the study. Clinical research trials were required to be conducted according to the study protocol, as well as any applicable laws and FDA regulations.

4.      Sponsors generally retained contract research organizations ("CROs") to oversee and conduct various aspects of clinical research trials. Sponsors and CROs typically contracted with multiple research sites to perform clinical research trials. Under such an arrangement, each individual research site was responsible for identifying study subjects, enrolling them into the study, performing the study, gathering data, and reporting the data to the sponsor and/or CRO, in accordance with the study protocol.

5.      Each research site had a principal investigator, also known as a clinical investigator. The principal investigator was the individual responsible for conducting the clinical investigation at that site and ensuring that the clinical research trial was conducted according to the study protocol and in compliance with all applicable FDA regulations. Responsibilities of the principal investigator included personally conducting or supervising the study, including all requirements regarding the qualification of the subjects, the dispensation of study medication, and the collection and reporting of data; obtaining informed consent from study subjects; reporting adverse events that occur during the study; and ensuring that all employees working on the study meet those same obligations. Sub-investigators worked under the direction of and assisted the principal investigator in conducting clinical trials.

6.      Principal investigators were also required, by regulation, to prepare and maintain

records relating to clinical research trials. These records, known as "case histories," included adequate records of the disposition of the study drug, including dates and quantities of drugs dispensed to subjects; informed consent forms and medical records for each subject participating in the clinical research trial; and records of all observations and other data pertinent to the investigation for each subject administered an experimental drug.

7. The FDA had the authority to inspect clinical investigators to ensure that investigators were complying with all applicable laws and regulations in conducting clinical trials. The FDA's inspection authority included the authority to review case histories and other records maintained by the clinical investigator.

8. Clinical investigators provided the information about each subject or enrollee in the study, including his or her medical history, laboratory results, and reaction to the drug under study, to the sponsor and/or CRO. The sponsor then provided the information to the FDA for its use in evaluating whether the drug was safe and effective and should be approved for its intended use.

### The Defendants and Their Co-Conspirators

9. Tellus Clinical Research, Inc. ("Tellus") was a medical clinic incorporated in Miami, Florida, that conducted clinical research trials of new drugs for pharmaceutical companies and other sponsors. Tellus's principal place of business was on Sunset Drive in Miami-Dade County, Miami, Florida.

10. Defendant **ANALAY RICO** resided in Miami, Florida. From in or around September 2013 and continuing through in or around May 2016, **RICO** was a clinical research coordinator at Tellus.

11. Defendant **DAYLEN DIAZ** resided in Miami, Florida. From in or around December 2014 and continuing through in or around June 2016, **DIAZ** was a research assistant

and assistant study coordinator at Tellus.

12.     Martin Valdes was a medical doctor licensed in the state of Florida and residing in Coral Gables. Valdes was the principal investigator responsible for conducting clinical research trials at Tellus.

### Clinical Trials At Tellus

13.     Between at least February 2014 and at least May 2016, Tellus, the Defendants, Martin Valdes, and other individuals at Tellus conducted various clinical trials on behalf of sponsors and CROs located throughout the United States.

14.     Among the clinical trials Tellus contracted to conduct were two trials concerning a new investigational drug intended to treat patients suffering from opioid dependency (collectively, "the opioid dependency trials"); two trials concerning a new investigational drug intended to treat patients suffering from irritable bowel syndrome (collectively, "the IBS trials"), and one trial concerning a new investigational drug intended to treat patients suffering from diabetic nephropathy, a kidney disease ("the diabetes trial").

15.     Prior to beginning a clinical trial, Tellus and Martin Valdes, as principal investigator, entered into a "Clinical Trial Agreement" or similar contract with a sponsor or CRO. Clinical Trial Agreements require, among other things, that investigators follow the study protocol. At or around the same time Tellus entered a Clinical Trial Agreement, Valdes, as the principal investigator responsible for conducting the trial, also signed a Form FDA 1572, in which he agreed to comply with the terms of the study protocol and all applicable FDA regulations.

16.     The study protocols required subjects to meet certain eligibility criteria to be enrolled in the study. For example, among other things, the opioid dependency trials required subjects to meet certain criteria for opioid dependence, the IBS trials required subjects to have

4

been diagnosed with irritable bowel syndrome with diarrhea, and the diabetes trial required subjects to have documented diabetic nephropathy and have certain levels of a specific protein, albumin, in their urine.

17.     The Clinical Trial Agreements between Tellus and its sponsors or CROs also generally included a schedule of payments the sponsor would pay Tellus per study subject for each procedure, test, office visit, or other event required under the study protocol, in addition to other fees.  The Clinical Trial Agreements and/or study protocols required Tellus, in turn, to pay individual study subjects directly for their participation in the clinical trial.  Tellus was generally required to pay study subjects upon successful completion of an office visit required by the study protocol.

## CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD
### (18 U.S.C. § 1349)

Beginning in or around February 2014 and continuing at least through in or around July 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ANALAY RICO and
DAYLEN DIAZ,**

and their co-conspirators did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the United States Attorney, to commit certain offenses against the United States, that is:

(a)     knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme

5

and artifice, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private or commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341; and

(b) knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, transmitting and causing to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

18. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by securing contracts to conduct clinical research trials, and causing sponsors and/or CROs to make payments on those contracts, by making material false and fraudulent representations regarding, among other things, subject eligibility for and participation in clinical trials.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

19. Martin Valdes and Tellus entered into Clinical Trial Agreements with sponsors and CROs, in which Valdes and Tellus agreed to conduct various clinical research trials, including the opioid dependency trials, the IBS trials, and the diabetes trial. As part of those agreements, Valdes and Tellus agreed to conduct the clinical research trials according to and in compliance with the

study protocols and all applicable laws and regulations.

20. To inflate the payments received from sponsors and/or CROs under the Clinical Trial Agreements, Defendants and their co-conspirators falsified the participation of study subjects in clinical trials. Defendants and their co-conspirators entered false information in the case histories of clinical trial subjects to make it appear that the subjects had, among other things, satisfied the eligibility criteria to participate in a specific clinical trial, provided informed consent to participate in a specific clinical trial, received a physical examination from a principal investigator and sub-investigator at Tellus in relation to a specific clinical trial, received and been administered a study drug at or by staff at Tellus, completed laboratory tests and patient assessments required by study protocols, reported data as required by study protocols, and received payment for visits to Tellus as part of the clinical trial.

21. Defendants and their co-conspirators recruited and enrolled subjects in clinical trials that they knew did not meet the eligibility criteria set forth in the study protocols, including subjects that they knew did not suffer from the medical condition or conditions intended to be treated by the study drug.

22. Defendants and their co-conspirators obtained and used personally identifiable information of third parties, including copies of identification documents such as drivers' licenses and passports, to enroll and falsely portray individuals as participants in clinical trials at Tellus. For example:

   a. **DAYLEN DIAZ** and her co-conspirators obtained personally identifiable information from third parties, including friends and family members, which **DIAZ** and her co-conspirators used to portray those third parties as participants in clinical trials at Tellus when, in fact, they did not participate in clinical trials at Tellus.

7

   b. In some instances, **DAYLEN DIAZ** and her co-conspirators obtained identification information from third parties without their knowledge or consent. **DIAZ** and her co-conspirators used the third parties' personally identifiable information to portray those third parties as participants in clinical trials at Tellus without their knowledge, consent, or participation in the clinical trial.

  23. Defendants and their co-conspirators falsely represented that study subjects had taken or been administered the study drug. In reality, Defendants and their co-conspirators discarded, without using, study drugs provided by the sponsors and required to be administered to the subjects under the study protocols.

  24. Martin Valdes and his co-conspirators falsely represented in case histories that the principal investigator or sub-investigator performed physical examinations of study subjects, as required by the applicable study protocol.

  25. Defendants and their co-conspirators falsified laboratory tests and patient responses required by the study protocol. For example:

   a. The study protocol for the IBS trials required that blood samples be collected from study subjects during specified office visits and sent for laboratory testing and analysis. **ANALAY RICO**, **DAYLEN DIAZ**, and their co-conspirators drew blood from employees of Tellus, sent the blood samples to a third-party laboratory for analysis, and received the blood test results back from the lab. **RICO**, **DIAZ**, and their co-conspirators then falsely represented in case histories of subjects in the IBS trials that the blood test results were those of the subjects in the IBS trials;

   b. The study protocol for the IBS trials required subjects enrolled in the study to place daily telephone calls into an e-diary system, enter a confidential personal identification

8

number specific to the subject, and answer questions to assess the subjects' drug usage, symptoms, and experience. **ANALAY RICO, DAYLEN DIAZ**, and their co-conspirators placed telephone calls to the e-diary system and answered questions required by the study protocol in the IBS trials in place of, and without the knowledge of, the study subjects enrolled in the IBS trials. Defendants and their co-conspirators provided false and fictitious answers in response to questions about, among other things, the subjects' daily drug usage and experience.

26. Defendants and their co-conspirators created false records indicating that study subjects received checks compensating them for their participation in the clinical trial. For example:

    a. **ANALAY RICO, DAYLEN DIAZ,** and their co-conspirators placed into subject case histories photocopies of checks made out from Tellus to the study subject. The checks purported to compensate the subject for his or her participation in the clinical trial, as specified in the applicable study protocol.

    b. **ANALAY RICO, DAYLEN DIAZ**, and their co-conspirators signed payment logs in subject case histories indicating that the subjects received checks on certain dates when, in fact, they had not received checks on certain dates.

    c. In some cases, **ANALAY RICO, DAYLEN DIAZ**, and their co-conspirators deposited checks, made out to a study subject and purporting to compensate him or her for participating in a clinical trial, into personal bank accounts owned and controlled by the defendants and their co-conspirators.

27. Defendants and their co-conspirators sent and received emails regarding the administration of clinical trials at Tellus, including emails relating to the dispensation of study drugs.

28.     Martin Valdes and Tellus entered Clinical Trial Agreements directing sponsors and/or CROs to make payments for clinical trials by (a) transferring funds electronically to bank accounts controlled by the owner of Tellus; and (b) mailing via U.S. mail checks to Tellus's offices located in the Southern District of Florida. Those checks were subsequently deposited into a bank account controlled by the owner of Tellus.

29.     Among other things, the owner of Tellus used the money received from sponsors and/or CROs to compensate the defendants and their co-conspirators for their participation in the conspiracy.

30.     To induce sponsors and/or CROs to enter into Clinical Trial Agreements with and provide money to the defendants and their co-conspirators, the defendants and their co-conspirators made and caused others to make numerous materially false and fraudulent statements to sponsors, CROs, and/or the FDA, including, among other things, the following:

### **Materially False Statements**

(a)     That Martin Valdes and Tellus conducted clinical trials, including the opioid dependency trials, the IBS trials, and the diabetes trial, in accordance with the study protocols applicable to each respective clinical trial;

(b)     That enrolled study subjects satisfied the eligibility criteria for participating in clinical trials, including the opioid dependency trials, the IBS trials, and the diabetes trial;

(c)     That Martin Valdes and a sub-investigator conducted physical examinations of subjects participating in the opioid dependency trials, the IBS trials, and the diabetes trial;

(d)     That Tellus staff dispensed or administered the study drug to subjects enrolled in the opioid dependency trials, the IBS trials, and the diabetes trial;

(e)     That subjects enrolled in the IBS trials provided blood samples;

(f) That subjects enrolled in the IBS trials placed telephone calls to the e-diary system;

(g) That Tellus staff disbursed checks to compensate subjects for participation in clinical trials, including the IBS trials and the diabetes trial.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
**(18 U.S.C. § 981(a)(1)(C))**

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which defendants **ANALAY RICO** and **DAYLEN DIAZ** have an interest.

2. Upon conviction of a conspiracy to violate Title 18, United States Code, Section 1341 or Section 1343, as alleged in this Information, any defendant so convicted shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

3. <u>Forfeiture Money Judgments</u>: The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a sum of money equal in value to the total amount of funds involved in or derived from the alleged offenses and may be sought as a forfeiture money judgment.

4. <u>Substitute Assets</u>: if any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

 All pursuant to Title 18, United States Code, Sections 981 and 982, and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

ARIANA FAJARDO ORSHAN
United States Attorney
Southern District of Florida

GUSTAV W. EYLER
Director
Consumer Protection Branch
U.S. Department of Justice

LAUREN M. ELFNER
JOSHUA D. ROTHMAN
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

**Analay Rico, et al.**

_____ Defendants. _____ /

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)
- ✓ Miami
- ___ Key West
- ___ FTL
- ___ WPB
- ___ FTP

New defendant(s)              Yes ___  No ___
Number of new defendants      ___
Total number of counts        ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    Yes
   List language and/or dialect    Spanish

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                                 (Check only one)
   I    0 to 5 days        ✓         Petty      ___
   II   6 to 10 days       ___       Minor      ___
   III  11 to 20 days      ___       Misdem.    ___
   IV   21 to 60 days      ___       Felony     ✓
   V    61 days and over   ___

6. Has this case previously been filed in this District Court?    (Yes or No)    No
   If yes: Judge _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers:     21-CR-20106-Scola/Goodman
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ___    No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ___    No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?    Yes ___    No ✓

_____
Lauren M. Elfner, DOJ Trial Attorney
Court ID No. A5502478

*Penalty Sheet(s) attached                                                                REV 6/5/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Analay Rico

**Case No**: _____

Count #: 1

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

\* **Max. Penalty**: Twenty (20) years' imprisonment

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Daylen Diaz

**Case No**: _____

Count #: 1

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Twenty (20) years' imprisonment

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| ANALAY RICO | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

**H. FRANK RUBIO, ESQ.**
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| DAYLEN DIAZ | ) | |
| | ) | |
| *Defendant* | ) | |

**WAIVER OF AN INDICTMENT**

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

**NELSON A. RODRIGUEZ-VARELA, ESQ.**
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*